United States v. Brian Morales, 2839. The other consolidated matter, United States Brian Morales is serving a sentence far longer than the court and even the prosecutor deemed appropriate in this case. And he's doing so because the court mistakenly believed that even though Mr. Morales otherwise qualified for the safety valve, the court's hands were tied. It could not grant Mr. Morales safety valve relief because Mr. Morales was afraid to sit down with the prosecutors privately and essentially repeat what he had already truthfully admitted. So was it enough that he pled guilty to get the safety valve? Excuse me, Your Honor? Was it enough that he pled guilty to get safety valve treatment? It's not enough in and of itself. You have to look at what happened here. And here there was a number of circumstances that might make it, that I think we make it enough. First of all, it was a fairly detailed factual allocution. Second, the court followed it with questions that went beyond the plea agreement itself and the allocution. So it was sort of like a proffer? Is that what you're saying? It was sort of like a proffer? It was very much like a proffer. The government for pages in the transcript goes on and on about what it believes it could establish with respect to Mr. Morales and his role in the conspiracy. But defense counsel didn't argue that that was sufficient, that that was the equivalent of a proffer. And the way this was presented to the judge was, by both sides, was he won't come in for a proffer. I believe that everybody in that courtroom labored under a misapprehension of the law. The law does not require a formal proffer. The statute says the defendant... Has there ever been a safety valve situation where someone doesn't come in and talk to the government? There's many... Yes, first of all, there have. I can't... They do it by letter? You can do it by writing. That was not suggested to this defendant. And I want this court really to keep in mind, we're talking about a very limited defendant here. Intellectually limited, suffering from bipolar disorder, sometimes having auditory hallucinations. His records reflect he was easily manipulated. He was not somebody who was going to come and suggest alternatives to what everybody seemed to think was the only way to do it. But there were other ways that weren't suggested by either of the lawyers or the court. The same issue as last time. If we were to vacate the conviction and it goes back down, what happens? He gets another chance to do something that's the equivalent of a proffer? Three possibilities, I think. One, he could be given another opportunity to proffer. He's been in jail now for a while. For all I know, he's on medication and maybe he's thinking... The judge said you're thinking wrongly. I think that was the judge's phrase. He might be thinking rightly now, and he might not be suffering from this tremendous fear that if he met privately with the government, he would be unsafe in prison. Or he could do the equivalent of a proffer, either a written statement or an open court. Somebody could ask him, in addition to all of this that we know from the 6,800 intercepted communications and the years of surveillance and the hundreds of communications that we intercepted between you, Mr. Morales, and your older brother who controlled you, is there anything else you can tell us? And maybe in open court he wouldn't suffer from the same fear. But I have no doubt that were he given another chance, given this record and what the court said, the court would give him a much lesser sentence, far more in keeping with what the court believed he deserved, and what even the government believed he deserved. So the desired relief is not just vacator, but remanding for resentencing? Remanding for resentencing, and with, I think, the opportunity for him to do one of those three options that I mentioned. Sit down for a proffer, maybe he'd do it this time, or find an alternative. The trial judge asks him point blank, do you want to be sentenced today? And he says, yes, I want to be sentenced today. Oh, he was not going to sit down for that proffer at that point. He was afraid. I don't know why. The record doesn't reflect it. The judge knew he was afraid. The judge said, are you afraid? He said, yes. The judge tried to talk to him, but he was afraid. But there was no, but the proffer was, in this case, was essentially pointless, because he was a cog in this wheel. They knew what he did. They knew what he knew. They had such an extensive investigation. The defense counsel didn't make that argument to the judge. I mean, the judge is making a decision based on what's presented to him. And what was presented to him by both sides is he's afraid to proffer. And the judge tried hard to get him to alleviate his fears. I believe that's true, and I'm not faulting. The judge really did try hard. I am faulting defense counsel, but I don't know that this is the forum to do so at this point. Defense counsel, I think, could have stood up and said, wait a minute, there are alternatives. That didn't happen. She did try to get her client to submit to the proffer, but there were alternatives, and they could have been suggested, and nobody did it. But I don't think that fault should lay with Mr. Morales, because he wasn't quick-witted enough to come up with an alternative that no lawyer had come up with, and the court didn't come up with. The error here is, you're suggesting, is that the district court required an actual proffer as opposed to acknowledging that there may be other ways to meet the fifth requirement. Your Honor, it's a two-part error. That's the first part of the error. The second part of the error is that this court has said that the district court must make an independent factual finding as to whether the defendant has truthfully provided the government with all of the information and evidence it has about the offense. That's what the statute requires. The statute doesn't talk about formal proffers, and the court never made that finding. It might have been able to even on this record, but it simply never thought it had to make that finding because of the first error, which is its belief, which is in its statement of reasons as to why he denied the safety valve, the statement of reasons that accompanies the judgment. The judge said it's because he did not sit down for a safety valve proffer. So having made the first error, he then compounded it by not – There's an appeal waiver here? There's an appellate waiver provision? Yes. That's the elephant in the room. I'd like to – I see my yellow lights on, but I would like to deal with that. Well, that's the only elephant in the room that I see, so please address that. It's a big elephant, but I don't think there was a genuine voluntary waiver in this case. The 151 months that's in the plea agreement, as far as Mr. Morales is concerned, is a number seemingly plucked out of thin air. Sure, Mr. Morales understood he could get 120 months, but nowhere in this record, nowhere is there any mention of the possibility that he could get a sentence of 151 months. The – making matters worse, there is discussion of the possible sentence – the plea agreement, by the way, doesn't contain a sentencing guideline range, but there was extensive discussion, and the prosecutor represented without the safety valve, without the safety valve, his sentencing guideline range was 108 to 135 months, really 120 without the safety valve, but 135 months is where it tops off. Why 151 months? There's no indication in this record that anyone ever told Mr. Morales why he was agreeing to a sentence so much higher than the sentence he would get under the guidelines or get under the mandatory minimum, or the consequences of that, that if the court just made a – disregarded the guidelines, made an egregious error, he would have no recourse. And the government, at page 43 of its brief, takes the position, as long as we have a specified number of months, the record doesn't have to disclose any basis for that number of months. Well, why not 360 months, 480 months? According to the government, there's no limits, but I submit that there should be, because the government has the upper hand in these plea to insist upon a plea waiver that bears no relationship to the sentence the defendant is likely to serve. The defendant is entering into a contract and is entitled to a benefit of the bargain. So let's look what would have happened here had Mr. Morales not signed that plea agreement and gone in two and a half months after the indictment and pled guilty and answered whatever questions were asked of him to establish a factual basis for the plea. He'd still be eligible for the three points in acceptance of responsibility and likely would have gotten them. Safety valve would still be in play, but he would retain the valuable right to appeal a sentence if there was procedural or substantive error or if the court simply misapplied the guideline and for whatever reason gave him a sentence of 151 months. He gave up that right and there's no evidence in this record that indicates that this significantly impaired defendant understood what he was giving up. Now, this court's hands are not tied. In the Rosa case, this court said it has an oversight role and can take on appeals even when there's an appeal waiver if the circumstances warrant it. I think this is one of those cases where the appeal waiver is fundamentally unfair and the court should look past it and reach what I think is a very meritorious underlying issue. I see my time is up with the court. Thank you very much. We have time for rebuttal, so we'll hear from the government. Mr. Silver. May it please the court, Paul Silver on behalf of the United States. I'd like to speak about the elephant first, your honors. This is about the best record I have ever seen of a waiver that was knowingly and voluntarily entered into. In the plea agreement, Mr. Morales. I'm sorry, I can't find the plea agreement. Where is the plea agreement? In the appendix? That's my apologies for wasting time. It starts with A93. A93, okay, thanks. In the plea agreement, Mr. Morales agrees to the 151-month waiver. He also indicates in the plea agreement that he has discussed each of the provisions of the agreement with counsel and understands those provisions. So I don't think there's any... It is odd that it's 151 months. I mean, usually the number is the top of the guideline range. That's exactly what this is, your honor. I thought the PSR said it was 87 to 108 with a mandatory minimum. Maybe the plea agreement should have said 120. There may be a difference between what the government initially said and what the probation department, probation office ultimately decided, but if you look at the guideline calculation that the government provided during the plea allocation and add three levels to that, you come to the range of 151 months to, I believe it's 188. So what the 151 months represents is the worst case scenario in the government's perspective that the defendant could have been subjected to, and it eliminated all the underlying issues for appellate review. But even if that were not the case, your honor, there is no case law that says the defendant has to be advised of how this number was arrived at or that it must be tied to the guidelines. And in fact, the plea agreement provides that nothing in the choosing of the 151 months should be construed to reflect any notion of what an Mr. Morales knew why we picked that number. That's something that would have occurred between him and his attorney, but there's no requirement that he had to understand. Can I turn to the issue of the proffer rather than the waiver? Where does it say, where do you read that a guilty plea and a discussion in open court isn't enough to equal, be the same as a proffer? Assuming for a moment that the information would be the same, the burden is on the defendant to provide information, not to admit information. The government drafts a plea agreement with sufficient information to establish the guilt of the defendant. Now, I can tell you right off the bat that that information is not coterminous with what I would expect Mr. Morales to know. For instance, the plea agreement, plea allocation does not name the individuals that Mr. Morales was providing heroin and fentanyl to. So they're not coterminous. But the law is also clear that the burden is on the defendant to comply with that fifth criterion, whether or not the information is useful to the government. So it may be that he comes in and says, all I know is what occurred during the plea allocation. Okay. And then we would make a determination whether we think- Is that elevating form over substance? I don't believe so, Your Honor. Why not? Because it's his obligation to provide information. I cannot say to you what he knows and what he doesn't know because he's never undertaken his obligation. Didn't he do it in the plea agreement? No. No. I say with respect, Your Honor. All we know is in the plea agreement, he admitted to what we said he did. That doesn't mean that we put everything in there, but even assuming we did, there's no way for the government to assess whether he has additional information or not. Unless he sits down or he could do it in writing, but it would be- It would make no sense to try and do this proffer in writing. First of all, as I've indicated in the brief, we're talking about a ten-month investigation, wiretap communications, multiple defendants, significant quantities of drugs, and defense counsel, counsel for appellant says, this is a person of limited intellectual abilities. The likelihood that he could sit down and write something that would satisfy the government is not good. But in addition to that, it's in the interest of both parties to have a proffer because if the defendant submits something in writing and the government- and he doesn't submit to a proffer at the request of the government, he is less likely to convince the court that his written proffer is complete. On the other side of the coin, if the defendant says I want a proffer and the government says we don't want to do that, just put it in writing, we're in a compromised position to say that the writing is sufficient. He asked questions during the plea agreement. Didn't the judge ask him questions before accepting the plea agreement? I'm sure he did. I don't remember specifically what he asked, but that's not the point, Your Honor. We don't know. And so, for instance, by way of analogy, Your Honor, and I did not cite these cases, but I think it answers your question. There have been cases, I believe from this court, where the defendant attempted to rely on his disclosures to the probation officer that went into the precinct's investigation report. And this court said no, you have to make your disclosure to the government. And he didn't do that. He never did that. And he made perfectly clear why he didn't do that. And it's a rational decision. Can I ask you a question just out of interest, Ms. Silver? Is it possible in your district for a defendant to provide a safety valve proffered by letter? Yes, I believe I have seen that, Your Honor. I don't think this is an appropriate case. I don't think it's likely that in a case like this, everything could be provided in a letter. There are just too many issues and questions. But the U.S. Attorney's Office permits a defendant to safety valve by letter, in some limited circumstances. I don't think we have the authority to preclude that, Your Honor. And it is true that Judge Sotheby said to the defendant, you know, you've got to do this proffer if you want to get the benefit of the safety valve. But in the context of this proceeding, what he was presented with, Judge Shins, you said earlier... Well, how do you respond to the argument that everybody was under the mistaken belief that there had to be an oral proffer? There's nothing in the record to establish that. There's nothing in the record that shows how defense counsel and government counsel reached an agreement to seek a proffer. I'm sure that's the default position in my office, because the letter is ordinarily insufficient. So there's nothing to suggest that the government insisted on an in-person briefing. It's just what both parties were... I think you have to... I don't think he did, Your Honor. I think you have to consider the judge's remark in the context of what was presented to him. The parties said, we are trying to accomplish an in-person briefing. And the judge said... The parties had suggested another way of doing it. I'm sure the judge would have said, that's fine with me, however you satisfy it. This judge in particular, in this case, was eager to grant it. What about the alternative of an in-court proffer? Is that ever done in your district? I've never seen that, Your Honor. It would be awkward. I don't think a judge would want to sit there and watch the defendant tell the government and be questioned about what he tells the government. This is a complicated case. We don't know what he would have said. Thank you, Your Honor. A couple of points. First of all, the judge told Mr. Morales that he was not going to have to say anything more at this proffer than what he essentially said in his plea agreement. So when the government now says, well, he would have to name names, the government itself said on record, I agree with the court, and secondly, you're not going to have to name names. If the parties had suggested another method, don't you think the court would have gone along with it? I think the court would have been delighted had the parties come up with another method, because nobody was happy with what went down there. And I don't think it's impossible to do it in open court, because we don't really know that Mr. Morales knew very much other than that his brother provided him with drugs. The problem is that we don't really know part of what you said. So that's why you don't want it in open court. Because there may be things as to which he might cooperate, and then it's in open court, and then the question is, what do you do with that information? You've got a judge sitting there anyway. We don't know how long it would last, and we don't know what a letter would have said if anybody had suggested a letter. Another thing I just want to respond to is this is more evidence of voluntariness in this case than he's ever seen. Yes, Mr. Morales answered the routine questions that are required by saying yes, yes, yes, yes. Any sentence to a term of imprisonment of 151 months or less. Any sentence of imprisonment of a term of imprisonment of 151 months or less. Oh, he definitely was told that. There's no question whether he understood where that number comes from. It's the government's position, and I think it's wrong. I think it's unfair, and I think it's wrong in plea agreement, that it can choose a number. And now it says the number comes from, well, if he didn't get the acceptance of responsibility point. That's nowhere in the record. I figured that out myself as a lawyer by sitting down and trying to manipulate the numbers. Where did this number come from? But there's no indication that Mr. Morales had to know. I think the defendant should have to know. These are agreements that should be- And that would constitute a new site to Rosa, but that's not quite Rosa. That would, for us to embrace that position, it would be a novel position for the Second Circuit to embrace. It might be novel, but it would reflect what actually happens in almost all the cases. Almost all the cases, there's a guideline range. And the defendant agrees to waive a plea within that guideline range. And the guideline range makes sense because it's explained, as it was explained here, how they got to the 108, 231, five months. I have not seen a case like this one, where a number appears without a guideline range and there's no explanation of why that number is chosen. Why isn't that an ineffective? I'm sorry, go ahead. I was going to say, I suppose the number should have been 120. The range was 87 to 108, mandatory minimum 120. I would think following usual practice, the waiver should have been set at 120. Or the top of the guideline range, which is 135. But- I mean, and if it had said that, would it have made a difference? It would. Would he have not pled guilty? If it had said 135 or 120 instead of 151? Well, this man was going to plead guilty if it said 480 months, I think. I think that's the problem here. And I did raise an ineffective accounts claim, and I think this is one of those rare cases where it's a very narrow, simple issue. And since there's no evidence that counsel explained to her client- But usually what we do in the, I think you were just going to say there's no evidence. What we usually do is channel that into the habeas process so you can, or your client, can file a habeas claiming ineffective assistance of counsel. Yes. Because we have no record of what the counsel was thinking. But I cited cases in my brief, and there are several, where the court has said when the issue is very narrow and simple, which this is, you can remand to the district court for a hearing on this narrow question, which would involve asking trial counsel and asking the defendant, did you ever discuss this 151 months? Did he understand it? Find out what happened, and it wouldn't require the very long, delayed process of collateral proceeding. Thank you very much. Thank you very much, Your Honor. We'll reserve the decision in that, as well as, as I said earlier, Jan Morales.